You're on the second case of the morning called 208-918, Eastern State of Illinois v. Victor Villa, on behalf of the Appalachians, Paul Jacob Laser, on behalf of the Appalachians, Mr. Charles Mansfield. Good morning, Mr. Laser. Good morning. Northeast Court. Counsel. Victor Villa appeals convictions for the offenses of aggravated battery with a firearm and aggravated discharge of a firearm following a jury trial in Hoonah County. The charges arose out of a shooting that occurred one evening following an incident in which my client was beaten by four others, including a nephew of a man who eventually was struck by a bullet as part of the shooting sometime later. Six to seven weeks after the incident, Victor surrendered himself to the police and eventually signed a culpatory statement. At trial, he testified and sought to refute that statement, explaining he did not know that Joe Fullis, from all appearances the shooter, the actual shooter, was going to shoot as he shoot into the crowd. It was up to the jury to decide whether to believe Victor Villa. Could they? His credibility was unquestionably damaged by his impeachment with his prior juvenile adjudication, especially after Prosecutor Glenn Weber referred to it some four times in his closing and final arguments to the jury, which gives rise to the issue for this morning, which is, are juvenile adjudications admissible for purposes of impeaching a defendant's testimony? We are now alone in interpreting case law to hold that the rules regarding impeachment by prior convictions established by Peel v. Montgomery also prohibit the use of a defendant's prior juvenile adjudication. The state, too, concedes that no case has held of testifying defense to a linquency adjudication admissible under Illinois law. In fact, in the Coleman case, which is the subject of their motion to cite additional authority, which we have no objection to, the Coleman case expressly recognizes that principle. On page nine of this sub-opinion, Fourth District says, as we sit here today, a juvenile adjudication of a defendant who testifies is normally not admissible. And how do you square that with 5-151C? The statute says that the, let me get out front of it, it says that only for, pursuant to the rules of evidence for criminal trials. That statement there, in that statement, the legislature has given the courts, as it probably can under the Constitution, the authority to decide what's proper evidence and what's not proper evidence in a trial. They, if they wanted to, they could have simply said that the prior adjudication is admissible, period. But it's pursuant to the rules of evidence. Well, even if they said it was admissible, it would still be within certain parameters. Even Montgomery says you can't use a prior conviction in an adult trial that's 30 years old. Right. Why isn't that the more reasonable? Well, Montgomery also says you can't use a juvenile adjudication as well. But that wasn't the statute amended thereafter? After Montgomery. Correct. But not, the most recent amendment is 99. They've had this statute before them for 11 years now and haven't changed it. And the case law since then continues the Montgomery standard of juvenile adjudications are not admissible. There are a couple of exceptions, though. For example, when the defendant himself or the defense counsel opens the door. For example, in this Coleman case that the state cited, the fourth district filed a defense counsel there. He had a reasonable strategic basis for wanting to get out the fact that his client had a prior conviction. So to explain, kind of get to the jury before they heard it from the state as to why the client may have had a fingerprint on the file and why his fingerprint would be found on a pizza box at the scene of the offense. Even if we agree with you, Mr. Weiser, that maybe the juvenile conviction or adjudication does not come in, even if we agree with the fourth district, how is the door not open here? The door wasn't open. The most analogous case, distinguishable as it is, is the Harris case from the Illinois Supreme Court from 2008. There the defendant took the stand and said, well, I've never committed any crimes before. That opens the door to, well, weren't you adjudicated delinquent once? In our case here, Victor said he was scared when he was trying to explain why he would have agreed to the inculpatory admission. Victor said he was scared when the police spoke with him that he'd never been in that situation before. He had never been in prison before. Now, that testimony may have given the state the open door to ask him about the time he was questioned by the same police officers six months before that. That opens the door for that, to refute his credibility on that. It did not open the door to the previous adjudication, particularly when we know that in that adjudication he only received probation. So he was telling the truth insofar as not going to prison before. And when he said he hadn't been in that situation before, that's kind of open-ended word. What does situation mean? And I'll grant the state the right to cross-examine him with evidence of his interrogation in January of that year. But to allow the prior in was a different question. Let me, on that point you're just making now, remind me, please, what did the trial judge, did he rule the door had been opened? What was the trial judge's basis? I'm not even sure. I thought he did something before the procedure. Well, it was a pretrial motion. And this is one of these unusual cases where we're arguing that the issue isn't forfeited or waived because defense counsel is unaffected. And what's unusual about it is that defense counsel did file a pretrial motion to keep out the prior and did file a post-trial motion included as a paragraph of his post-trial motions. Usually, with defense counsel doing both of those things, you can't criticize it. But here, the trial court specifically asked defense counsel, do you have a case that says I can't admit two adjudications? And he says no. And then later he goes, well, in fact, they are admissible. Well, defense counsel got it wrong. He didn't do the research when he did his motion. His understanding of the law was totally wrong, and that by itself is ineffective assistance. When you read that in context, it seems that the judge was asking, since the statute has been amended, is there anything out there that says one way or the other? And Mr. Villa's attorney says really no. Well, then Mr. Villa's attorney was wrong because there were cases out there since the statute was Kearns, which was 92. I'm not sure exactly when. The statute is public at 85-601. I'm not sure exactly when it was first passed. But there's the Kearns case, the Snead case from 95. There's cases that recognize that notwithstanding that phrase about pursuant to the rules of evidence, the judge still, prior convictions, adjudications are different from prior convictions. And the weight of case law is that they're not admissible. And unlike Coleman, there's no conceivable strategic benefit to getting out this evidence of the prior, the admission of the prior and the prosecutor's use of it, repeated use of it, that I might find a fair trial. My question. No, go ahead. I was getting at if the question of whether the statements were enough to open the door would be an abuse of discretion standard for the trial court if the trial court ruled on that basis? Normal eventuary rulings are a matter of discretion, certainly. Yeah, so I don't remember if the trial judge did, in fact, exercise that discretion. That's what I was asking. I'm not recalling whether there was a specific defense objection to that cross-examination or not. Okay. But, again, I have to admit that by saying I've been in a situation before and there being evidence that he was, in fact, in that situation before, being questioned by the same officers before, that's proper cross-examination. But it doesn't open it. Limited to? Limited to that. It doesn't open the door to everything. It opened the door to that specific instance. And we're not complaining about that. Our complaint is that the juvenile adjudication is a different thing. Montgomery recognized it. The cases we've cited recognize it. Courts, currents recognize it, that there is a quantitative difference between a prior conviction or a prior adjudication and just a prior bad act. Okay. So your position is that the amendment to the statute meant that the legislature still leaves it up to the courts whether to do it, and the courts go back to the law that existed before that amendment, and they're not in. That's correct. And also when the judge in this case said, Well, gee, I have discretion. Counsel, is there a case law? And counsel says, No, there's no case law. You can admit it. Well, that seals the deal that he's going to lose the motion. Had counsel known there was case law that forbade the use of, if I'm using the verb correctly, the use of prior adjudications, the judge may well have ruled a different way in deciding the motion. Okay. Therefore, we ask for your trial. Thank you. Pleasure. Thank you. Counselor? Thank you, Your Honor. May it please the court. Counsel, let me begin with an apology to counsel and the court. It appears from the defendant's reply brief that the defendant thought I was criticizing him, criticizing his word, for noting that he had not cited any post 19, that all his cases were pre-1999. The reason I did that, counsel, was certainly not to in any way criticize your performance, but to note that Public Act 9590 became effective January 1, 1999. And with that, there was a change in the statute, section 1, 150, 1C. Okay. Not addressed this morning, so I will make the statement only very briefly. The state's position that Montgomery adopted a rule of evidence that it did not promulgate a rule of the Supreme Court. Therefore, the legislature is constitutionally authorized to amend that rule. Well, how do you explain the Fourth District's opinion? I'm sorry, Your Honor? How do you explain the Fourth District's opinion? Okay. The Fourth District's opinion, and you mean in Coleman? Right. Okay. If I may read a paragraph to you. which held a previous version of Section 5151C supplanted Rule 609D and had specifically found the statute did not, and found the statute did not supplant Rule 604, 609D. Kern said no, the statute did not supplant. The Coleman Court continues. In fact, the statute and the rule as adopted by our Supreme Court in Montgomery can be reconciled when the statutory language pursuant to the rules of evidence for criminal trials is considered. In other words, the legislature has said a defendant who chooses to testify may be impeached with a juvenile adjudication, but has conditioned the use of such impeachment on the rules of evidence for criminal trials. Okay, that's a paragraph on their supplemental, sorry, slip opinion, page 9. Now, the State's position is that that is a correct statement of the law. What happens, though, rather than saying that that amendment, that amended the Montgomery rule by removing the prohibition on admitting juvenile adjudications of a defendant who testifies, the court never said that the legislature did that or had the power to do it. What it said is the legislature has said a defendant who chooses to testify may be impeached. The court went on that, and I'm continuing to quote from page 9. Our Supreme Court has adopted Rule 609 as a rule of evidence to be used by trial courts. Rule 609 does not permit impeachment of a defendant with a juvenile adjudication. That obviously is true. Thus, as we sit here today, a juvenile adjudication of a defendant who testifies is normally not admissible. The court then cited Harris for the open door. And I would point out, actually, that the Montgomery rule itself does not include opening the door as an authorization for introduction of impeachment evidence. So if Montgomery 609-D is strictly applied, then the Illinois Supreme Court, for several decades, well, since 1971, has been wrong in allowing an open door. But they're not wrong. They allow the open door because the credibility of witnesses is so important. Now, let me step back to the decision. I apologize for the lecture. I used to be a university professor, but in geology, and I tend to lecture, and I apologize for that. It's probably more interesting. If you could please record anything you want to write on what kind of rocks to throw at attorneys that talk too long, I would be happy to consult with you. Okay, continuing with Coleman. Thus, defendant argues his lawyer, who was retained to represent the defendant, was ineffective for bringing defendant's prior adjudication to the jury's attention. However, a review of the entire trial transcript reveals…otherwise. What I think happened, and what the Kearns Court, the 4th District Court in Kearns, in 1992, found objectionable, was the McClendon, again, the 4th District's earlier decision, because it appeared to eliminate the Montgomery balancing test to determine admissibility of juvenile adjudication. If, as the McClendon court had said, 5151C eliminates Montgomery, then it eliminates the balancing test, and the effect would be to allow all adjudications in against a defendant, but not allow prior convictions unless a balancing test is performed. So I think that's what the Kearns Court found objectionable in the McClendon decision. In fact, Kearns cited Cleary and Graham's handbook of Illinois evidence for the proposition that no reason exists why a juvenile adjudication offered to impeach credibility as a prior conviction should be automatically admissible, while an adult conviction for the same offense requires discretionary balancing. Now, indeed, under the version of Section 5151C, in effect, at the time of this defendant's trial, and still in effect, in the words of the Kearns Court, a juvenile adjudication offered to impeach credibility as a prior conviction is no more admissible than an adult conviction for the same offense, which requires discretionary balancing. What 5151C does, it applies to persons on trial for a criminal offense, the same exposure to impeachment, whether that defendant has a prior conviction or a prior juvenile adjudication. Now, this is entirely consistent with what the Illinois Supreme Court in Taylor, and I have cited it in the State's brief, stated about what the legislature in enacting Public Act 9590 did. The court said that the legislature largely rewrote Article 5 of the Act to provide more accountability for the criminal acts of juveniles. Now, if we look at Article 5, Section 5101, purpose and policy, we see that right at the top, the legislature says it is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problems of juvenile delinquency, a system which will protect the community and which will impose accountability for violations of the law. The statute continues that an important purpose of this article, and there are several listed, is, among other things, to hold each juvenile offender directly accountable for his or her acts, and there I'm quoting subsection 1B. In subsection 2J of 5-101, the statute says that to accomplish these goals, juvenile justice policies developed pursuant to this Act shall be, and obviously there's a long list because I'm reading from J, to hold minors accountable for their unlawful behavior and not allow minors to think that their delinquent acts have no consequences for themselves and others. Who's got the authority here, the legislature or the court system? Can the court system in the face of all of that that you just read still, does the Supreme Court have the authority to say that adjudications are not admissible? I really wish you hadn't used the word authority, Your Honor, but let me answer this way. The Illinois Supreme Court can say they're not admissible. It would be wrong because the legislature has amended the Montgomery Rule of Evidence. They codified it in 1982. Let me ask you another question. I avoid answering your question, I'm sorry. Well, that's all right. What the defense argument is, is that the legislature has left this up to the courts and that the pre-existing court rules still apply, but if the court system and the person, I suppose, of the Supreme Court, maybe us, rule differently. But at the moment, this is the law. You follow the law that exists and it doesn't come in. Even though the statute would let it in, that was his argument. He leaves it up to the court to decide. The state's position is the legislature has the constitutional authority to adopt and amend rules of evidence, and Montgomery is a rule of evidence. In Harris, this specific issue was raised by the state and expressly not addressed by the Supreme Court because they found, they chose to apply in the alternative the open door policy. It seems to me clear that because what Montgomery adopted, Federal Rule of Evidence 609, is not in Illinois Supreme Court rules. It's not one of the enumerated rules. It's not a court rule that's been promulgated. It's like any other rule of evidence, for example, a hearsay rule that had been adopted and has been amended by the legislature. It is like the well-settled, the judicially well-settled prohibition on admitting propensity evidence, yet the legislature specifically allowed and the Illinois Supreme Court affirmed the legislature's act permitting propensity evidence in sex offense cases. I still want to know what your response is to the defense's argument that even though the statute would allow this in, case law does not. If the case law were to change, the legislature's leaving it up to the court to rule. Right now, he's saying that the existing law doesn't allow it in. I believe with all due respect, counsel, this is incorrect because I believe that the legislature does have the power, it does have the constitutional authority to amend in the future judicial decisions. They cannot backdate a decision to change it. They cannot backdate a statute to change a decision among parties where it's already settled, but they can change the law. They can change the court decision or the result of the court decision by amending by legislation. They can do it by legislation through a legislative act. This is part of the legislature's constitutional responsibility. The court's responsibility is to decide, to determine what the legislature really did and whether it had the authority to do that. All right, so if People v. Montgomery was issued today, then the state Supreme Court would be overriding the legislature, and you'd say that'd be wrong, but they have the authority to do it. Yes. But we have People v. Montgomery issued before the change in the statute, and you say we're going to presume now that the state legislature can speak the final word on this until the Supreme Court acts again. Yes. All right, I understand your position. That was 1971, the statute. Counsel, I'm sorry, I know you have a little trouble hearing. I'm speaking loudly. The bell has rang, so your time is up. Oh, I'm sorry.  I would like to thank the court for its attention. It was our distinct pleasure. Thank you very much, counsel, for the defense again. Thank you. Your Honor, the statute specifically respects Montgomery and gives it effect. Does it where it says, pursuant to the rules of the criminal process? Yes, it does. It says, well, you've taken the words back and rebuttal. But can't you just assume, can't we assume that that statement, excuse me, pursuant to the rules of evidence for criminal trials relates to the 10 years, that there's still the balancing factor that has to be done, but they've done away with the limitations on a juvenile. Can't we read it that way? Then it would say, pursuant to some of the rules of criminal trials. It's pursuant to the rules, when they say refer to the rules of evidence for criminal trials, that's a specific, an implicit recognition that there's a case called People v. Montgomery, which has established the rules for admission of prior convictions for impeachment in criminal trials in the state. Right, but wouldn't it be totally inconsistent to say the first portion and then to add on pursuant to the rules of evidence for criminal trials? No, I think it refers to Montgomery as setting forth the rule. And Montgomery said that a witness who is not the defendant can be impeached with juvenile litigation. That's OK. But if the witness is the defendant, he cannot. That's what Sneed says. That's what Kern says. That's what Coleman says. That's not what the new statute says. And that's what the statute refers to, the rules of evidence, which have been interpreted by the courts to mean that juvenile adjudications are not admissible for him to impeach a defendant at a criminal trial. Why would the legislature say in one hand, you can use a juvenile adjudication against the defendant for impeachment, and then in the last sentence say, just kidding, because Montgomery says you can't. Doesn't that seem either our legislature isn't paying attention or we're being too myopic? I mean, how do you balance that? I'm looking at the statute as a whole, and it refers to admissibility of evidence, adjudications, and other proceedings. It talks about its admission in criminal trials. Subsection D talks about the civil proceedings, other proceedings on this act. They're trying to cover a whole wide range of proceedings and say, okay, which cases, what are the rules governing admission and certain things? In civil proceedings, it's okay. We don't care if it's the defense, the witness, or not. But in criminal trials, the legislature has deferred to the courts or the states' ability to craft rules of evidence, and those rules specifically prohibit the use of juvenile adjudications. Oh, I see what you're saying. So you're saying that the statute is, this statute was meant for civil cases, and should the impeachment come in for a criminal case, then you go to the second case? I think it's trying to cover everything, yes. It was intended to cover all kinds of proceedings. And when you talk about criminal trials, now the rules of evidence for criminal trials take effect. And those rules, and as much as the state has argued this morning, they haven't said anything. There's an LRA case out there that, except for situations where there's been an open door, which is a completely different concept of waiver and everything else, and counsel waiver and whatever, LRA law clearly is on the side of keeping out juvenile adjudications to impeach a defendant who testifies at his or her trial. Thank you. All right. Thank you both for your arguments. The matter will be taken under advisory decision on the issue in due course. There will be a short recess before we call the next case.